IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JULIE FERRARO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 03-CV-151-TCK |
| | ) |
| FARMERS INSURANCE COMPANY, Inc., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Dkt. No.47).

**I.    Background**

On December 8, 2000, Plaintiff was injured in a car accident. She reported the accident to Defendant, her insurance carrier, that same day and made an uninsured/underinsured motorist ("UM/UIM") claim. At the time of the accident, Plaintiff had three policies of insurance issued by Defendant which provided UM/UIM benefits in the combined sum of $90,000. On June 31, 2001 the tortfeasor's liability insurer offered its $25,000 liability benefits and Plaintiff accepted. Defendant waived its subrogation rights.

After evaluating Plaintiff's medical records and having her evaluated by an independent medical examiner, Defendant offered Plaintiff $47,000. Plaintiff rejected the offer and after further evaluation, on December 4, 2001, Defendant offered Plaintiff $67,000. Plaintiff accepted the offer and signed two releases in doing so. Both releases read, in part:

> FOR AND IN CONSIDERATION OF THE SUM OF [Thirty Seven Thousand dollars and no/cents][Thirty Thousand Dollars and no/cents], receipt of

1

which is hereby acknowledged, the undersigned in her capacity as the insured hereby releases, discharges, and for himself/herself, his/her heirs, executors, administrators successors and assigns, does forever release and discharge [Defendant] hereinafter called insurer, including their [sic] agents and assigns, from all rights, claims, demands and damages of any kind, resulting from bodily injury arising from an accident that occurred on or about the 8th day of December, 2000 at or near 71st and S. 109th E. Ave. and being made under the Uninsured Motorist insuring agreement[s]
. . . .
AND FURTHER: In consideration of such payment the undersigned represents and warrants that this is a full and final release applying to all known claims, unknown and anticipated injuries, deaths or damages arising out of this accident, casualty, or event.

I UNDERSTAND THAT THIS ALL THE MONEY THAT WILL BE RECEIVED UNDER THE UNINSURED MOTORIST PORTION OF [THE POLICIES] FOR THE DAMAGES RESULTING FROM THIS ACCIDENT.

Def.'s Mot. for Summ. J. Ex. D. Plaintiff's husband also executed the releases.

During settlement negotiations, Plaintiff claims that she demanded the policy limits of $90,000.[1] At the time of settlement, Defendant had total settlement authority of $76,706.00, $9,706.00 more than Defendant actually paid to settle the case. Defendant used the Colussus claim valuation system to value Plaintiff's claim. Colussus offers a settlement range for personal injury claims based on information that is input in the program by Defendant's agents. Plaintiff does not offer a statement of a total value of her claims but she does state she believed her claims exceeded the $90,000 policy limits available to her and that she demanded same. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. Exhibit B p. 98 ll. 2-24.[2]

Plaintiff alleges claims of breach of contract, violation of the Oklahoma Insurance Code,

---

[1]Defendant denies Plaintiff demanded policy limits. This is not a material fact for purposes of summary judgment.

[2]The Court assumes Plaintiff maintains that her remaining claims, meaning those claims not paid for by the initial $25,000 received by Plaintiff from the tortfeasor, exceeded the $90,000 policy limit.

and, tortious claims of knowing false representation, bad faith, and fraud by concealment.

Defendant here moves for summary judgment contending Plaintiff cannot establish sufficient grounds to set aside the settlement agreement and resulting releases.

## II.     Standard for Summary Judgment

Summary judgment is generally appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The Court must view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *See Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986); *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Where the nonmoving party will bear the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury. *See Mares*, 971 F.2d at 494. However, "[b]efore the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) (internal citations and quotations omitted).

## III.    Applicable Law

A release is a contract. Such contracts are valid and enforceable when, (1) an attempt to excuse one party from liability is expressed in clear, definite and unambiguous language, (2) the contract is made at arm's length with no vast disparity in bargaining power between the parties, and (3) when it is not contrary to public policy. *Trumbower v. Sports Car Club of America, Inc.*, 428 F.Supp.1113 (W.D. Okla. 1976). The burden of proof is upon the party seeking to set aside the

contract to show fraud or mistake to establish such grounds by clear and convincing evidence. *Burch v. Keen*, 449 P.2d 700 (Okla. 1969).

A contract, including a release, however, may be set aside if it has been obtained by fraud. OKLA. STAT. tit. 15, §§ 52 and 233. While it is the policy of the law to encourage compromise and settlement, a written release in a personal injury action will be set aside where it has been so procured. *St. Louis & S.F.R. Co. v. Bruner*, 152 P. 1103 (Okla. 1915); *St. Louis & S.F.R. Co. v. Chester*, 138 P. 150 (Okla. 1914). "If the defendant either independently or through its agent was guilty of overreaching, unfair practice, or of using its superior knowledge to take advantage of its ignorance, inexperience, or credulity of the plaintiff to thus obtain for itself an unfair advantage, it should not be permitted to retain the same." *State Life Ins. Co. of Indianapolis v. Ussery*, 69 P.2d 43, 46 (Okla. 1937).

### IV.   Discussion

Plaintiff argues Defendant obtained the releases from Plaintiff by fraudulent measures. Specifically Plaintiff states that Defendant had authority to offer her more money than the amount she accepted in settlement, that Defendant coerced her into settling by stating she could take that amount or sue Defendant, and finally, that Defendant violated the Oklahoma Insurance Code and its insurance contract with Plaintiff by using the Colussus claim valuation system to knowingly undervalue Plaintiff's claim. Plaintff characterizes her suit as one that is about Defendant's unreasonable withholding of "the amount that would fairly compensate her for her damages under the UM/UIM portion of Plaintiff's policy with Defendant."

The initial question for the Court then, is whether Defendant's representations to Plaintiff about the value of her claim were fraudulent rendering the releases signed by Plaintiff and her

4

husband invalid.

In arguing this question, Plaintiff offers a number of disputed facts that are relevant to Plaintiff's alleged bad faith claim, but cannot carry her burden of showing that she accepted the settlement monies under fraudulent or coercive circumstances. Really, the only thing Plaintiff asserts that was fraudulent in the settlement negotiations was that Defendant had additional settlement authority that it did not offer her.

Defendant had no obligation to offer monies up to the amount authorized. By its offer and accompanying statements, Defendant indicated it was willing to be sued if it had to pay one cent more that $67,000. Plaintiff opted not to sue and took the money. She did this with the knowledge that she had once before rejected Defendant's offer and, that Defendant had in fact counteroffered. Additionally, Plaintiff accepted the settlement offer knowing that Defendant had opted not to pay any portion of her $30,000 bill for TMJ resolution and had undervalued her lost wages. *See* Def.'s Mot. for Summ. J. Ex. E p. 64 ll. 3-25. Typically when the insurer and insured reach an impasse as to the value of a claim, the only option is for the insured is to sue if she refuses to accept less than she believes her claim is worth.

Thus, the very nature of settling a claim indicates that one will accept less than they believe their claim is worth in order to resolve the suit. That is apparently what Plaintiff, albeit begrudgingly, did here. It was not fraudulent or coercive for Defendant to state that Plaintiff could take the $67,000 or "go to court." If Plaintiff wanted additional monies for her claim she had to sue them and that is precisely what Defendant told her. That is not fraud, it is negotiating with an insurance company.

Plaintiff's arguments regarding the undervaluation of her claim, such as failing to properly

5

calculate her lost wages and refusing to include her bills for treatment of TMJ, also do not constitute fraud. Plaintiff steadfastly maintains that she knew the value of her claims exceeded policy limits. *See B.S. Birch v. Keen*, 449 P.2d 700, 702 (Okla. 1969) (refusing to set aside release where plaintiff was aware of injury at time of settlement). Plaintiff presents no evidence that Defendant did not inform Plaintiff of its valuation method and how it specifically valued Plaintiff's claim to formulate what it believed was a fair settlement figure. *See, e.g*, Def.'s Ex. E p. 64 ll. 3-25.

Finally as to the use of Colussus for the valuation of Plaintiff's claim and the resulting alleged breach of the Oklahoma Insurance Code, Plaintiff makes no effective argument. Plaintiff states the Colussus system fails to take into account many items of injury for which an insured would reasonably expect coverage and which insureds are entitled to under Oklahoma law. Plaintiff offers neither specific facts nor citations to statute to demonstrate this failure. Without some specific allegation of how Colussus violates the Code nor evidence of how the use of Colussus caused her to enter the settlement under a false pretense, there is no genuine issue of material fact for trial. Again though, the legitimacy of Colussus is not the issue before the Court. Whether Defendant's agent made his own list of damages and come up with a figure he felt fairly compensated Plaintiff for her damages or used Colussus to assist him in determining a settlement figure is irrelevant in this case.

In the end, the only thing at issue before this Court is whether the Defendant procured the releases by fraud. The Court cannot find so. Because the releases Plaintiff signed are valid, and Plaintiff released all claims related to the accident on December 8, 2000, Defendant's Motion for Summary Judgment is GRANTED in its entirety. Defendant shall prepare a proposed Order of Judgment for submission to this Court within ten (10) days of the date of this Order.

ORDERED this __19__ day of AUGUST, 2005.

_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE